IN THE UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

IN ADMIRALTY

CASE NO.: _____- Civ

HOWARD GEIGER,

      Plaintiff,

vs.

CARNIVAL CORPORATION,
d/b/a CARNIVAL CRUISE LINES,

      Defendant.

_____/

## COMPLAINT FOR DAMAGES

COMES NOW, the Plaintiff, HOWARD GEIGER, by and through his undersigned counsel

and sues the Defendant, CARNIVAL CORPORATION doing business as CARNIVAL CRUISE

LINES, hereinafter "CARNIVAL", and alleges as follows:

1.      This Claim is an action involving the diversity of citizenship of the parties as

more fully described below and for damages in excess of $75,000.00. Alternatively, this case falls

within the admiralty jurisdiction of this Court pursuant to 28 U.S.C. 1333.

2.      The Plaintiff, HOWARD GEIGER, is an individual and citizen of Catonsville,

Maryland.

3.      This Court has personal jurisdiction over the Defendant, CARNIVAL, and

venue is proper in this Court as the Defendant, a Panamanian Corporation, operates a passenger

cruise ship line from its' principle place of business which is located in Miami-Dade County,

Florida. Moreover, the claims asserted herein are directly related to and arise from the operation of

such passenger cruise ship line. Further, CARNIVAL, expressly limited Plaintiff's claim to this

*Geiger v. Carnival*

forum in the express language of the contract for carriage, the ticket sold for Plaintiff's passage. (Exhibit 1) Further, CARNIVAL's ticket indicates there is a one-year (1) statute of limitations to bring claims.

4.      At all times material herein, the Defendant, CARNIVAL, owned, operated, and/or otherwise controlled the passenger ship the Carnival Glory.  Accordingly, CARNIVAL is a common carrier of passengers by water for hire.

5.      At all times material hereto, the Plaintiff, HOWARD GEIGER, was a fee paying passengers on the Carnival Glory pursuant to the purchase of the aforementioned passenger ticket.

6.      Further, at all times material hereto, the Defendant, CARNIVAL, employed a fully staffed medical facility with physicians and nurses who were employees and apparent agents and /or actual agents of the Defendants CARNIVAL working aboard the Carnival Glory. The Defendant's physicians and nurses who treated the Plaintiff in this matter were at all times acting within the course and scope of said employment and agency.

7.      At all times material hereto, the Defendant, Carnival, was vicariously liable for the negligence of the aforementioned ship's physicians and nurses and other personnel working in the medical facility of the Carnival Glory who treated the Plaintiff in this instance as they were employees, apparent agents, and actual agents the Defendant.

8.      That at all times material hereto, the Defendant, CARNIVAL, owned, operated, controlled, and/or maintained the medical facility aboard the Carnival Glory, and were responsible for selecting, purchasing and maintaining the medical equipment and medications contained therein.

9.      On or about February 27, 2016 the Plaintiff was disembarking the Carnival Glory

2

*Geiger v. Carnival*

in Miami with his family and was going to return to Maryland.

10.     On the morning of February 27, 2016 the Plaintiff began to feel weak and his right arm became numb. He reported this to the ship's infirmary before disembarking the vessel.

11.     Carnival's medical staff saw, evaluated, tested, and treated the Plaintiff at that time while they were in the port of Miami. He was informed that he was fine and that his arm was "numb" most likely because he had slept on it. He was told he could return to Maryland.

12.     The Plaintiff proceeded to board his flight home to Maryland with his wife at that time.

13.     During the flight the Plaintiff grew much weaker and he lost control of his right arm; he reported to an emergency room as soon as he got off the flight.

14.     At the emergency room the Plaintiff was diagnosed with having suffered a severe stroke.

15.     The Plaintiff spent numerous days in the hospital recovering as well as months of therapy in an effort to fully recover from this stroke, which to this day he has not.

16.     As a result Plaintiff, HOWARD GEIGER, suffered, and continues to suffer, permanent and painful injuries and residual injuries / deficits as a result of this stroke, including but not limited to injuries to his entire right side of his body which require on-going medical care, up to and including the present time.

## COUNT I
## NEGLIGENCE AS TO CARNIVAL BASED UPON ACTUAL AGENCY

The Plaintiff, HOWARD GEIGER, re-alleges paragraphs 1-16 as if fully stated herein:

17.     At all times material hereto, the Defendant CARNIVAL owned, operated, controlled,

3

*Geiger v. Carnival*

and/or maintained the medical facility aboard the Carnival Glory, and were responsible for selecting, purchasing and maintaining the medical equipment and medications contained therein and for selecting and hiring the doctors, nurses and other medical personnel working in said medical facility.

18.     Further at all times material hereto, the Defendant CARNIVAL controlled and/or maintained the right of control over the doctors, nurses, and other medical personnel working in its medical facility in the exercise of their job duties, including the treatment of patients, and including more specifically the Plaintiff in this matter. The Defendant Carnival exercised such control and/or right of control in many different ways, including, but not limited to the following:

(a) Setting the standards, criteria and procedures for selecting and hiring said personnel;

(b) Establishing, adopting and enforcing rules, regulations and protocols for the treatment of patients at its medical facility;

(c) Maintaining and/or exercising the right to both hire and fire said personnel;

(d) Establishing the amount, method and manner of payment for said personnel;

(e) Paying a salary, bonus and benefits to said personnel;

(f) Establishing and enforcing the terms of employment for such personnel, including their hours, job duties and the details of their work;

(g) Setting the standards and criteria to determine which patients were to be treated by said personnel;

(h) Determining and setting the specific charges for treatment to its passengers and requiring that all such charges be paid directly to CARNIVAL on the passenger's shipboard charge card;

(i) Supplying the tools, workplace and equipment for said personnel to perform their job duties;

(j) Determining and selecting the medications, drugs and supplies to be used in the ship's

*Geiger v. Carnival*

medical facility; purchasing said medications, drugs and supplies to stock the medical facility; setting the prices for the use and or sale of such medications, drugs and supplies to passengers and requiring the passengers to pay it directly for such medical, drugs and supplies on their shipboard charge cards;

(k) Advertising the existence of the medical facility as part of its marketing campaigns in order to attract passengers;

(l) Treating said personnel as members of its crew, subject to the vessel's rules and regulations and the authority of its officers and requiring them to carry out crew functions and wear crew uniforms;

(m) Requiring said personnel to take specific courses and training, including those offered by the Defendant;

(n) Agreeing to staff, equip and operate the medical facilities and the provision of medical services therein under the industry Guidelines issued by the American College of Emergency Physicians and requiring its medical personnel to practice medicine and treat patients in accordance with the requirements of said Guidelines;

(o) Through the use of their shore side medical department, which is staffed with various doctors and other medical personnel that can communicate with its ships literally anywhere in the world electronically;

(p) By entering into contracts with various land based hospitals, such as the Cleveland Clinic and/or Jackson Memorial Hospital to provide medical expertise and requiring their shipboard medical personnel to utilize such services in the treatment of passengers and crew in specified situations;

(q) Through the use of electronic technology, including video-conferencing and tele-medicine with their shore side medical department and hospital contract providers to control the treatment provided;

(r) By requiring the senior Medical Officer aboard the Glory to supervise the nurses and other personnel working in their Medical Facility; and

(s) In other manners that are expected to be determined in continuing discovery and investigation.

19.     At all times material, the Defendant CARNIVAL also relied upon and directed its' ship's physicians and other personnel in their medical facility aboard the Glory to perform specified

*Geiger v. Carnival*

duties to assist them in complying with their regulatory duties and obligations, including but not limited to those set forth by the U.S. Public Health Service, Drug Enforcement Agency, Coast Guard and Center for Disease Control. The Defendant CARNIVAL also relied upon its' ship's physicians and other personnel in their medical facility aboard the Glory to fulfill the requirements of the United States under both the Cruise Vessel Safety and Security Act and the general maritime requirement to provide maintenance and cure to the seamen which operated their vessel to carry licensed physicians.

20.     At all times material hereto, Defendant CARNIVAL's ship's physicians and other personnel in their medical facility aboard the Glory were agents and employees of the Defendant CARNIVAL for which the Defendant is vicariously liable for the negligent treatment of the Plaintiff as set forth below.

21.     As a result of Plaintiff's status aboard the vessel as a passenger, CARNIVAL, and its' employee and agent ship's physicians and medical staff at all times material hereto owed the Plaintiff a duty to exercise reasonable care in promptly, properly and adequately providing the Plaintiff with appropriate medical care. Accordingly, CARNIVAL, and its' employee and agent ship's physicians and medical staff at all times material hereto owed all of its passengers, and the Plaintiff in particular, the duty to exercise reasonable care in promptly, properly and adequately providing the appropriate medical care.

22.     The negligence and acts and or omissions of the Defendant, CARNIVAL, its' agents, employees, and servants and its' employee and agent ship's physicians and medical staff for which Defendant is vicariously liable which caused Plaintiff, HOWARD GEIGER, to become injured as described above consists of the following:

6

*Geiger v. Carnival*

a. Failing to properly and promptly diagnose and assess and monitor the Plaintiff's conditions including but not limited to the failure to determine that the Plaintiff was suffering a stroke;

b. Failing to perform necessary scans, tests and examinations to determine the extent and nature of Plaintiff's condition;

c. Failing to get Plaintiff off of the vessel in a prompt and reasonable fashion for shore-side care and delaying the Plaintiff's medical care making the Plaintiff's stroke much worse and causing the Plaintiff to have major resulting complications which could have been avoided with timely medical treatment and / or earlier appropriate medical intervention and medicinal therapy;

d. Failing to properly diagnose Plaintiff's injury by overlooking, failing to recognize, and or otherwise failing to appreciate his symptoms including but not limited to the Plaintiff's right arm numbness, symptomology, and his prior medical history all of which resulted in a devastating stroke which was preventable;

e. Failing to provide Plaintiff with the proper follow up care, treatment, and monitoring including but not limited to appropriate follow up care for the Plaintiff's condition despite being on notice of this situation which led to a devastating stroke for the Plaintiff;

f. Failing to provide necessary therapy and medications which would have prevented this medical condition or at the very least sending Plaintiff to a local hospital where appropriate medication could have been given preventing Plaintiff from having a stroke; and

h. In other manners expected to be discovery during the course of ongoing investigation and discovery in this matter.

23.    As a direct and proximate result of the foregoing breaches of its duty to

Plaintiff, HOWARD GEIGER, suffered and continues to suffer injuries and damages alleged below

and further requires on-going, extensive medical care.

24.    As a direct and proximate result of this breach, the Plaintiff, HOWARD GEIGER,

suffered bodily injury, which caused and continues to cause him pain and suffering both past and

*Geiger v. Carnival*

present, mental anguish, scarring, aggravation of pre-existing conditions, and emotional distress and loss of capacity for the enjoyment of life. Further, the Plaintiff has incurred the costs of medical care and treatment and will require medical care for the remainder of his life which will include care for the residual deficits that Plaintiff has as a result of this stroke all of which were avoidable but for the Defendant's negligence in this matter. All of these damages and injuries are permanent and continuing in nature and he will suffer them into the future.

WHEREFORE, Plaintiff, HOWARD GEIGER, demands judgment for all damages allowed by law in excess of $75,000.00, against the Defendant, together with interest, costs, and any and all other relief this Court deems appropriate and a jury trial on issues so triable by a jury as a matter of right.

Dated: this      day of November, 2016.

Respectfully submitted,

*Louis A. Vucci, Esq.*
Louis Vucci, Esq.,
Fla. Bar No.:131581
Louis@thevuccilawgroup.com
Louis A. Vucci, PA
Attorney for the Plaintiff
8101 Biscayne Boulevard
Suite 311
Miami, Florida 33138
Tel. (305) 573-0125
Facsimile (786) 536-7799

8